FILED

2011 OCT 13 PM 1:31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN DANA,<br>JASON RAY PATTERSON,<br>RONALD GEORGE TOMICH,<br>aka "Ronko Tomich,"<br>ISAAC SOUSSANA,<br>aka "Jack Soussana,"<br>ISRAEL SOUSSANA,<br>aka "Izzy Soussana," and<br>PATRICIA SNUGGS,<br><br>Defendants. | CR NO. 11- CR 11 00963<br><br>INDICTMENT<br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(1): Bank Fraud; 18 U.S.C. § 1957: Transactions in Criminally Derived Property; 18 U.S.C. § 1014: False Statements to a Financial Institution; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to Be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH EIGHTEEN

[18 U.S.C. §§ 1343 and 2(a)]

A. INTRODUCTORY ALLEGATIONS

1. At all times relevant to this Indictment:

Defendants

a. Defendant ALLEN DANA ("DANA") was a resident of

MJK

San Bernardino and Los Angeles Counties, within the Central District of California.

b. Defendant JASON RAY PATTERSON ("PATTERSON") was a resident of Los Angeles County, within the Central District of California. Defendant PATTERSON was a licensed real estate agent with the State of California, Department of Real Estate ("D.R.E."). As a licensed real estate agent, defendant PATTERSON had a fiduciary duty of utmost care, integrity, honesty, and loyalty to his clients.

c. Defendant RONALD GEORGE TOMICH, also known as ("aka") "Ronko Tomich" ("TOMICH"), was a resident of Orange County, within the Central District of California. Defendant TOMICH also was a registered real estate agent with the D.R.E., and he also had a fiduciary duty of utmost care, integrity, honesty, and loyalty to his clients.

d. Defendant ISAAC SOUSSANA, aka "Jack Soussana" ("J. SOUSSANA"), was a resident of Los Angeles County, within the Central District of California. Defendant J. SOUSSANA was a mortgage loan officer licensed by the State of California who worked at J&R Lending Inc., a mortgage lending and brokerage firm incorporated in the State of California and doing business under the name First Security Lending ("First Security"). First Security did business from offices located in Los Angeles, Burbank, and Northridge, California, within the Central District of California.

e. Defendant ISRAEL SOUSSANA, aka "Izzy Soussana" ("I. SOUSSANA"), was a resident of Los Angeles County, within the Central District of California. Defendant I. SOUSSANA was a

mortgage loan officer licensed by the State of California who also worked at First Security. Defendants J. SOUSSANA and I. SOUSSANA were brothers.

f. Defendant PATRICIA SNUGGS ("SNUGGS") was a resident of Los Angeles County, within the Central District of California. Defendant SNUGGS was a real estate appraiser licensed by the State of California, Office of Real Estate Appraisers.

Co-schemers

2. Co-schemer 1 was a resident of Orange County, within the Central District of California. Co-schemer 1 created and owned So Cal Custom. Beginning in or about 2005, defendant DANA and Co-schemer 1 used So Cal Custom and So Cal Custom bank accounts to, among other things, receive and distribute the illicit profits of fraudulent residential real estate transactions.

3. Co-schemer 2 was a resident of Orange County, within the Central District of California. Co-schemer 2 was a licensed attorney in the State of California. Co-schemer 2 operated Quick Escrow Inc. ("Quick Escrow"), an escrow company that did business from offices located in Westminister, California, within the Central District of California. As an escrow officer in California, Co-schemer 2's role was to act as a neutral third party in residential real estate transactions, and to comply with a lender's closing instructions ("closing instructions").

4. Co-schemer 3 was a resident of Los Angeles County, within the Central District of California. Co-schemer 3 was an escrow officer with Vintage Escrow, Inc., an escrow company that

did business from offices located in Huntington Beach, California, within the Central District of California. As an escrow officer in California, Co-schemer 3's role was to act as a neutral third party in residential real estate transactions, and to comply with a lender's closing instructions.

5. Co-schemer 4 was a resident of Los Angeles County, within the Central District of California. Co-schemer 4 operated J & O Tax Bookkeeping, LLC, a company that provided accounting and tax services from offices located in Los Angeles, California, within the Central District of California.

6. Co-schemer 5 was a resident of Orange and Los Angeles Counties, within the Central District of California.

The Victim Lenders

7. Encore Credit Corporation ("Encore Credit") was a residential mortgage lender that was based in Irvine, California, within the Central District of California.

8. New Century Mortgage Corporation ("New Century") was a residential mortgage lender that was based in Irvine, California, within the Central District of California.

9. CMS Capital Group Inc. ("CMS Capital") was a residential mortgage lender that was based in Encino, California, within the Central District of California.

10. Silver State Financial Services, Inc. was incorporated in the State of Nevada and did business as Silver State Mortgage ("Silver State"). Silver State was a residential mortgage lender that was based in Henderson, Nevada.

11. American Home Mortgage ("American Home") was a residential mortgage lender with offices in Melville, New York.

12. Washington Mutual Bank ("WAMU") was a federally-chartered financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

13. Washington Mutual Bank, FA was a federally-chartered financial institution the deposits of which were insured by the FDIC.

14. First Franklin was a residential mortgage lender that was based in San Jose, California. First Franklin was a division of National City Bank of Indiana ("National City Bank"), which until July 22, 2006, was a federally-chartered financial institution the deposits of which were insured by the FDIC.

15. Bank of America, N.A. was a federally-chartered financial institution the deposits of which were insured by the FDIC.

16. Countrywide Bank, FSB ("Countrywide Bank") was known as Countrywide Bank N.A. until March 12, 2007. Countrywide Bank and Countrywide Bank N.A. were federally-chartered financial institutions the deposits of which were insured by the FDIC.

17. Countrywide Home Loans, Inc. ("Countrywide Home Loans") was a subsidiary of Countrywide Bank.

///

///

///

B. THE SCHEME TO DEFRAUD

18. Beginning on a date unknown to the Grand Jury, but no earlier than in or about June 2005, and continuing through in or about September 2007, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants DANA, PATTERSON, TOMICH, J. SOUSSANA, I. SOUSSANA, and SNUGGS, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud the victim lenders as to material matters, and to obtain money and property from the victim lenders by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

19. The scheme to defraud operated, in substance, in the following manner:

a. Posing variously as a real estate investor, real estate agent, and/or mortgage broker, defendant DANA recruited individuals who had good credit to serve as nominee purchasers ("straw buyers") of beach-front condominiums listed for sale by defendants PATTERSON and TOMICH. To enlist the straw buyers in the scheme, defendant DANA promised the straw buyers, among other things, that: (i) the straw buyers would not have to make any down payments; (ii) defendant DANA would use some of the money received from the sellers at closing to make mortgage payments for a period of time, which defendant DANA typically represented to be one year; and (iii) defendant DANA would pay the straw buyers a fee when the real estate transactions closed. As defendant DANA then well knew, the straw buyers did not have

either sufficient income or assets to purchase beach-front condominiums in Long Beach, California, and the straw buyers had no intention of ever occupying those properties.

b. On behalf of the straw buyers, defendant DANA presented offers to defendants PATTERSON and TOMICH at prices that were higher, sometimes significantly higher, than the prices at which the beach-front properties were listed. As a condition of paying those above-market prices, defendant DANA insisted that the sellers agree to pay Co-schemer 1, So Cal Custom, or a third party, at the close of escrow, the difference between the offer and list prices (the "cash back condition").

c. Knowing that defendant DANA's offer prices were higher than the true market values of the listed properties, defendants PATTERSON and TOMICH presented the sellers of the condominiums with defendant DANA's inflated offer prices and the cash back condition. When some sellers questioned defendants PATTERSON and TOMICH about the legitimacy of the offers and the cash back condition, defendants PATTERSON and TOMICH reassured the sellers that the offers were indeed legitimate. Based on those representations by defendants PATTERSON and TOMICH, most sellers accepted the inflated offer prices and agreed to comply with defendant DANA's cash back condition.

d. After the sellers accepted the inflated offer prices with the cash back condition, defendants PATTERSON and TOMICH drafted California Residential Purchase Agreements ("RPAs") between the sellers and the straw buyers. Defendants PATTERSON and TOMICH typically also served as agents for the

straw buyers in the real estate transactions, thereby representing both parties to the transactions.

e. Defendants PATTERSON and TOMICH intentionally disguised and concealed the nature of the promised cash back payments from the victim lenders through the following means, among others: (i) by describing the payments in the RPAs as "referral fees" or "consultation fees," instead of as payments representing the difference between the inflated offer prices and the lower list prices; and (ii) by not including in the RPAs the full amount of cash that the sellers agreed to pay to Co-schemer 1 or So Cal Custom at the close of escrow. As defendants PATTERSON and TOMICH then well knew, however, (i) the sellers' payments to the buyers were neither "referral fees" nor "consultation fees" because neither the buyers nor anyone purportedly affiliated with the buyers had performed any services for the sellers that would have required the sellers to pay the buyers either "referral fees" or "consultation fees"; and (ii) both non-disclosure of the nature of the promised cash back payments and the full amount of the cash back payments were material to the victim lenders' decisions to approve mortgage loans.

f. When a seller refused an offer with a cash back condition because the seller believed such an offer to be illegitimate or illegal, defendants DANA, PATTERSON, and TOMICH restructured the transaction into two concurrent sales (also referred to herein as "double escrows"), specifically, (i) defendant DANA personally purchased the condominium from the seller at its list price (the "first sale" or "first escrow");

and (ii) on the same day that the first sale closed, defendant DANA re-sold the condominium to a straw buyer at approximately the same inflated offer price that had been rejected by the seller because the seller believe such an offer was illegitimate or illegal (the "second sale" or "second escrow").

g. To obtain the financing necessary to carry out the scheme to defraud, defendant DANA caused the straw buyers to sign either blank or already-completed residential mortgage applications to purchase the condominiums listed by defendants PATTERSON and TOMICH. Either before or after the straw buyers signed the mortgage applications, defendant DANA completed, and caused to be completed, the residential mortgage applications in the names of the straw buyers. Defendant DANA included, and caused to be included, materially false information in the residential mortgage applications about, among other things, the straw buyers' purported employment, income, assets, and intention to reside in the condominiums.

h. Defendant DANA submitted to defendants J. SOUSSANA and I. SOUSSANA the completed false mortgage applications signed by the straw buyers. Defendants DANA, J. SOUSSANA, and I. SOUSSANA typically caused the straw buyers to apply for mortgage loans equal to 100% of a condominium's purchase price. Either defendant J. SOUSSANA or defendant I. SOUSSANA signed the mortgage applications. Defendants J. SOUSSANA and I. SOUSSANA typically stated that they had interviewed the borrowers by telephone and falsely affirmed that the information provided in the applications was "true and correct." In truth and in fact, defendants J. SOUSSANA and I. SOUSSANA typically did not

interview the straw buyers applying for these mortgages, and defendants J. SOUSSANA and I. SOUSSANA knew that the mortgage applications included materially false information. Defendants J. SOUSSANA and I. SOUSSANA nevertheless submitted, and caused to be submitted, the materially false applications to the victim lenders for approval.

i. Defendants J. SOUSSANA and I. SOUSSANA also submitted, and caused to be submitted, to some victim lenders false and fraudulent documentation in support of the mortgage applications, including materially false and fraudulent verifications of employment, verifications of deposit, and letters of explanation. Defendants J. SOUSSANA and I. SOUSSANA created, and caused to be created, false and fraudulent letters of explanation when victim lenders requested, as a condition of closing, further explanations for various representations included in the mortgage applications that defendants J. SOUSSANA and I. SOUSSANA previously had submitted to the victim lenders. For example:

i. Defendants J. SOUSSANA and I. SOUSSANA created, and caused to be created, bank statements that falsely stated that the straw buyers had large amounts of cash on deposit.

ii. Defendant I. SOUSSANA paid Co-schemer 4 to prepare letters that falsely represented that the straw buyers were self-employed and that Co-schemer 4 had prepared the mortgage applicants' tax returns ("CPA Letters").

j. As defendants J. SOUSSANA and I. SOUSSANA then well knew, in extending mortgage loans to the straw buyers, the

victim lenders relied on the materially false and fraudulent mortgage applications, CPA letters, and letters of explanation, and the false and fictitious bank statements and verifications of deposit that defendants J. SOUSSANA and I. SOUSSANA submitted, and caused to be submitted, to victim lenders.

k. Defendants DANA, PATTERSON, TOMICH, J. SOUSSANA, and I. SOUSSANA retained defendant SNUGGS to appraise properties at inflated values that corresponded to the inflated purchase prices included in the RPAs. Knowing that the purchase prices were inflated, defendant SNUGGS nevertheless appraised the properties at or close to the fraudulently inflated purchase prices that defendants DANA, PATTERSON, TOMICH, J. SOUSSANA, and I. SOUSSANA included in the RPAs and mortgage loan applications they provided to the victim lenders.

l. Defendants DANA, PATTERSON, and TOMICH, and Co-schemer 3, submitted, and caused to be submitted, materially false information to some of the victim lenders, including through the submission of a false and fraudulent invoice for $184,562.50, purportedly for "services rendered" by So Cal Custom to a seller, to support the payment of $184,562.50 to So Cal Custom at the close of escrow. Defendants DANA, PATTERSON, and TOMICH, and Co-schemer 3, also concealed, and caused to be concealed, material information from those victim lenders, including the omission from HUD-1 closing statements of a $250,000 payment to So Cal Custom at the close of escrow.

m. For transactions that involved double escrows, because defendant DANA had neither the funds nor financing from a mortgage lender to actually consummate the first sale, defendant

DANA caused a victim lender to issue a mortgage loan to the straw buyer in the second sale, and used those proceeds to pay off the seller and the seller's bank in the first sale. Defendants DANA, PATTERSON, and TOMICH, and Co-schemer 2, concealed, and caused to be concealed, material information from the victim lenders, including: (i) the existence of the two concurrent sales; (ii) that defendant DANA did not hold title to the property he was purporting to sell in the second sale; and (iii) that defendant DANA was using the proceeds from the second sale to pay off the seller and the seller's bank in the first sale. In addition, defendants DANA, PATTERSON, and TOMICH intentionally did not disclose this information to the condominium owner in the first sale, and thereby concealed, both the existence of the two concurrent sales and that defendant DANA was using proceeds from a concurrent second sale to pay off the seller and the seller's bank in the first sale.

20. The scheme to defraud involved the following properties, among others:

a. 1000 E. Ocean Boulevard, # 409, Long Beach, California.

b. 1000 E. Ocean Boulevard, # 609, Long Beach, California.

c. 1500 E. Ocean Boulevard, # 609, Long Beach, California.

d. 850 E. Ocean Boulevard, # 711, Long Beach, California.

e. 1000 E. Ocean Boulevard, # 715, Long Beach, California.

f. 1000 E. Ocean Boulevard, # 715, Long Beach, California.

g. 1500 E. Ocean Boulevard, # 614, Long Beach, California.

h. 1000 E. Ocean Boulevard, # 105, Long Beach, California.

i. 1000 E. Ocean Boulevard, # 714, Long Beach, California.

j. 1000 E. Ocean Boulevard, # 415, Long Beach, California.

k. 700 E. Ocean Boulevard, # 1606, Long Beach, California.

l. 1000 E. Ocean Boulevard, # 610, Long Beach, California.

m. 1000 E. Ocean Boulevard, # 614, Long Beach, California.

C. <u>THE USE OF THE WIRES</u>

21. On or about the dates set forth below, within the Central District of California and elsewhere, the below-named defendants, aided and abetted by each other and by others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, transmitted, caused the transmission, and aided and abetted the transmission of, the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| ONE | 5/31/2006 | TOMICH | $1,147,289.26, sent by First Franklin Financial, wired from National City Bank's account number XXXXXXXXX1234 in Ohio, through the Federal Reserve Bank of New York processing center in New Jersey, to Fidelity National Title Company's Comerica Bank account number XXXXXX8570 in Michigan. |
| TWO | 5/31/2006 | TOMICH | $285,528.40, sent by First Franklin Financial, wired from National City Bank's account number XXXXXXXXX1234 in Ohio, through the Federal Reserve Bank of New York processing center in New Jersey, to Fidelity National Title Company's Comerica Bank account number XXXXXX8570 in Michigan. |
| THREE | 6/2/2006 | TOMICH | $235,293.68, sent by Fidelity National Title Company, wired from Comerica Bank account number XXXXXX8570 in Michigan, through the Federal Reserve Bank of New York processing center in New Jersey, to Academy Escrow's East West Federal Bank account number XXXX5845 in California. |

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| FOUR | 10/18/2006 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $996,742.44, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| FIVE | 10/18/2006 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $329,457.38, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| SIX | 11/30/2006 | DANA, TOMICH, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $998,713.30, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York's processing center in New Jersey, to Chicago Title Company's Comerica Bank account number XXXXXX3942 in Michigan. |

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| SEVEN | 11/30/2006 | DANA, TOMICH, J. SOUSSANA, I. SOUSSANA, and SNUGGS, | $330,756.31, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York's processing center in New Jersey, to Chicago Title Company's Comerica Bank account number XXXXXX3942 in Michigan. |
| EIGHT | 12/1/2006 | DANA, TOMICH, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $715,315.93, sent by Chicago Title Company, wired from Comerica Bank account number XXXXXX3942 in Michigan, through the Federal Reserve Bank of New York's processing center in New Jersey, to Vintage Escrow's Wells Fargo Bank account number XXXXXX6686 in Minnesota. |
| NINE | 11/30/2006 | DANA and TOMICH | Unsigned payment authorization form, sent by facsimile from Co-schemer 3 in Huntington Beach, California, to Y.M.J. in Phoenix, Arizona. |
| TEN | 11/30/2006 | DANA and TOMICH | Executed payment authorization form and wire instructions, sent by facsimile from Y.M.J. in Phoenix, Arizona, to Co-schemer 3 in Huntington Beach, California. |

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| ELEVEN | 2/6/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $1,055,132.40, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York's processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| TWELVE | 2/6/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $349,959.80, sent by Silver State Financial Service, wired from Washington Mutual Bank, FA account number XXXXXX8328 in Washington, through the Federal Reserve Bank of New York's processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| THIRTEEN | 2/9/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $641,680.61, sent by North American Title Company, wired from Comerica Bank account number XXXXXX8331 in Michigan, through the Federal Reserve of New York's processing center in New Jersey, to Quick Escrow's Wells Fargo Bank account number XXXXXX7772 in Minnesota. |

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| FOURTEEN | 4/30/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $652,893.49, sent by Countrywide Bank, wired from Bank of New York account number XXXXXX4639 in New Jersey, through the Federal Reserve Bank of New York's processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| FIFTEEN | 4/30/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $164,946.32, sent by Countrywide Bank, wired from Bank of New York account number XXXXXX4639 in New Jersey, through the Federal Reserve Bank of New York's processing center in New Jersey, to North American Title Company's Comerica Bank account number XXXXXX8331 in Michigan. |
| SIXTEEN | 5/1/2007 | DANA, PATTERSON, J. SOUSSANA, I. SOUSSANA, and SNUGGS | $490,818.58, sent by North American Title Company, wired from Comerica Bank account number XXXXXX8331 in Michigan, through the Federal Reserve Bank of New York's processing center in New Jersey, to Quick Escrow's Wells Fargo Bank account number XXXXXX7772 in Minnesota. |

| COUNT | DATE | DEFENDANT(S) | ITEM WIRED |
|---|---|---|---|
| SEVENTEEN | 6/19/2007 | DANA, TOMICH, and SNUGGS | $995,120.75, sent by American Home Mortgage Corporation, wired from Deutsche Bank Trust Company account number XXXX6440 in New Jersey, through the Federal Reserve of New York's processing center in New Jersey, to Lawyer's Title Company's Comerica Bank account number XXXXXX7380 in Michigan. |
| EIGHTEEN | 6/19/2007 | DANA, TOMICH, and SNUGGS | $256,081.67, sent by American Home Mortgage Corporation, wired from Deutsche Bank Trust Company account number XXXX6440 in New Jersey, through the Federal Reserve of New York's processing center in New Jersey, to Lawyer's Title Company's Comerica Bank account number XXXXXX7380 in Michigan. |

COUNTS NINETEEN THROUGH TWENTY

[18 U.S.C. §§ 1344(1) and 2]

22. The Grand Jury hereby repeats, realleges, and incorporates paragraphs 1 through 17, 19, and 20 of this Indictment as though fully set forth herein.

A. THE SCHEME TO DEFRAUD

23. Beginning on a date unknown to the Grand Jury, but no earlier than in or about June 2005, and continuing through in or about September 2007, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants DANA, J. SOUSSANA, and I. SOUSSANA, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, executed and attempted to execute a scheme to defraud the victim lenders as to material matters.

B. EXECUTIONS OF THE FRAUDULENT SCHEME

24. On or about the following dates, within the Central District of California, and elsewhere, the below-named defendants, each aiding and abetting the other, committed and attempted to commit, and willfully caused others to commit and attempt to commit, the following acts, among others, each of which constituted an execution of the fraudulent scheme:

///

///

///

| COUNT | DATE | DEFENDANT(S) | ACT |
|---|---|---|---|
| NINETEEN | 10/21/2005 | DANA, J. SOUSSANA, and I. SOUSSANA | For straw buyer J.P.R.'s purchase of the condominium at 1500 E. Ocean Boulevard, # 609, Long Beach, submission of a Fannie Mae Form 1003 to WAMU, falsely stating that J.P.R. (1) was the self-employed owner of Pinata Foods earning $27,500 per month; (2) had Bank of America bank accounts with $100,000 and $58,095 on deposit; and (3) was going to occupy the residence. |
| TWENTY | 11/9/2005 | DANA, J. SOUSSANA, and I. SOUSSANA | For straw buyer L.C.'s purchase of the condominium at 1000 E. Ocean Boulevard, # 715, Long Beach, submission of two Fannie Mae Form 1003s to WAMU, FA, falsely stating that L.C. (1) was the self-employed owner of a party coordinating/event planning business earning $25,000 per month; (2) had a Bank of America bank account with $200,000 on deposit; and (3) was going to occupy the residence. |

COUNTS TWENTY-ONE THROUGH TWENTY-FIVE

[18 U.S.C. §§ 1957 and 2]

25. The Grand Jury hereby repeats, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 17, 19, and 20 of this Indictment as though fully set forth herein.

26. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANA, aided and abetted by others known and unknown to the Grand Jury, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344(1):

| COUNT | DATE | ACT |
|---|---|---|
| TWENTY-ONE | 2/28/2007 | Transfer to defendant DANA of check for $80,000, payable to "So Cal Custom." |
| TWENTY-TWO | 2/28/2007 | Transfer to defendant DANA of check for $20,000, payable to "Margarita Olague." |
| TWENTY-THREE | 5/1/2007 | Transfer to defendant DANA of check for $119,000, payable to "SOCAL CUSTOMS." |
| TWENTY-FOUR | 6/22/2007 | Transfer to defendant DANA of check for $103,982.76, payable to "So Cal Custom." |
| TWENTY-FIVE | 6/22/2007 | Transfer by wire of $150,000, sent by Kiet and Associates, to SM Management, LLC. |

COUNT TWENTY-SIX

[18 U.S.C. § 1014]

27. On or about March 10, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendant JASON RAY PATTERSON ("PATTERSON") knowingly made a false statement and report for the purpose of influencing the action of Bank of America, N.A., an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, in connection with an application, purchase, commitment, and loan, in that defendant PATTERSON executed and submitted to Bank of America, N.A., in support of an application for a mortgage loan, a Uniform Residential Loan Application for defendant PATTERSON's purchase of the condominium located at 1 3rd Place, # 403, Long Beach, California ("Unit 403"), that falsely stated that defendant PATTERSON intended to occupy Unit 403, when in truth and in fact, as defendant PATTERSON then well knew, defendant PATTERSON did not intend to occupy Unit 403 and, in fact, did not ever occupy Unit 403.

COUNT TWENTY-SEVEN

[18 U.S.C. § 1014]

28. On or about January 14, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant JASON RAY PATTERSON ("PATTERSON") knowingly made a false statement and report for the purpose of influencing the action of Bank of America, N.A., an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, in connection with an application, purchase, commitment, and loan, in that defendant PATTERSON falsely represented to an employee of Bank of America, N.A., in support of an application for a mortgage loan for defendant PATTERSON's purchase of the condominium located at 850 East Ocean Boulevard, # 512, Long Beach, California ("Unit 512"), that defendant

///

///

///

PATTERSON intended to occupy Unit 512, when in truth and in fact, as defendant PATTERSON then well knew, defendant PATTERSON did not intend to occupy Unit 512 and, in fact, did not ever occupy Unit 512.

A TRUE BILL

/S/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

BEONG-SOO KIM
Assistant United States Attorney
Chief, Major Frauds Section

STEPHEN A. CAZARES
Assistant United States Attorney
Deputy Chief, Major Frauds Section

HARVINDER S. ANAND
Assistant United States Attorney
Major Frauds Section